MABELVALE SPECIAL SCHOOL DISTRICT v. HALSTEAD SPECIAL
                    SCHOOL DISTRICT.

              Opinion delivered November 2, 1925.

1.  RECORDS—EVIDENCE TO SUPPLY LOST RECORD.—Evidence *held* in-
    sufficient to prove the contents of a record of the county court
    alleged to be lost.

2.  SCHOOLS AND SCHOOL DISTRICTS—ORDER TRANSFERRING CHILDREN
    AND TAXES.—An order for the transfer of children and taxes
    from one school district to an adjacent district is merely tem-
    porary and remains in effect only while the districts of and from
    which the transfer is made remain in existence, and any change
    in the status of the territory operates as an abrogation of the
    order of transfer.

3.  SCHOOLS AND SCHOOL DISTRICTS—RECOVERY OF TAXES IMPROPERLY
    DISTRIBUTED.—Where school taxes have been regularly but erro-
    neously distributed to a school district and been consumed in
    educational purposes, the district which should have received
    them is not entitled to recover therefor from the other district.

Appeal from Pulaski Chancery Court; *John E. Mar-
tineau,* Chancellor; reversed.

*Floyd Terral* and *A. L. Rotenberry,* for appellant.
*Isgrig & Dillon,* for appellee.

McCULLOCH, C. J.   This is a controversy between
two adjoining special school districts in Pulaski County
concerning the distribution of taxes on certain tracts of
land, each district claiming that the lands in controversy
lie within its boundaries.   The action was instituted by
appellant in the Pulaski Chancery Court against appellee
and the county clerk and treasurer of the county to
restrain the clerk and treasurer from distributing the
taxes on the lands in controversy, and to compel the offi-
cers, by mandamus, to distribute those taxes to appellant
district, and also to restrain the distribution of taxes for
future years to appellee district.   In the original com-
plaint there was also a prayer for recovery from appellee
district of the amount of taxes on these lands for prior
years used by appellee district, but the amended com-
plaint omits that prayer; at least, it is not insisted here
that appellant is entitled to recover of the Halstead Spe-

cial School District the taxes received and used by the district in prior years. The only effort is to secure for appellant district the taxes for the years 1923 and 1924, which were in the hands of the treasurer, and also to prevent diversion of those funds to the Halstead District in future years.

The history of the formation of both the districts and the description of the boundaries, so far as disclosed by the records of the county court, are brought into the record of this case. It appears from those records that Common School District No. 1 was created by an order of the county court in the year 1869, and embraced the lands involved in the present controversy. Common School District No. 39 was created by order of the county court on March 10, 1885, out of a part of the territory of District No. 1, including the lands in controversy. On June 27, 1885, Common School District No. 40 was created by order of the county court out of part of the territory of District No. 39, and embraced the lands in controversy, and on April 27, 1906, District Nos. 39 and 40 were consolidated and designated as Common School District No. 40. In the year 1914, Common School District No. 40 was converted into a rural special or single school district designated as Mabelvale Special School District. It is thus seen that, according to the record, the lands in controversy were originally in Common School District No. 1 and then in District No. 39 and then in District No. 40 and then in Mabelvale Special School District, and according to those records the lands are in that district now.

It is the claim in behalf of Halstead Special School District that about the year 1901 there was an order of the county court changing the boundaries of Districts Nos. 1 and 39 so that the lands in controversy were retransferred from the latter to the former, and that when the Halstead Special School District was created by order of the county court in the year 1918 out of the territory of Common School District No. 1, the lands in

controversy thereby fell within the boundaries of that
district.    In the trial of the case in the chancery court,
the Halstead Special School District sought to sustain its
contention by introducing parol testimony to prove an
order of the county court retransferring the lands in con-
troversy from Common School District No. 39 to Com-
mon School District No. 1. Conceding that such proof
was competent to establish such a record (*Davies* v. *Pettit,*
11 Ark., 349), we are of the opinion that the proof fails
to come up to requirements, in that it is not definitely
shown that such an order was ever made by the county
court or that it had been lost.    Two or three witnesses
residing in Halstead Special School District testified that
somewhere about the year 1901 there was a movement
among the people of that locality to bring this disputed
territory into District No. 1 on account of the convenience
to the people residing there and the schools in District
No. 1.    No witness testified to being present in court
when a petition for the changes was made or acted on
by the court.    The only witness whose testimony tends
to establish an order of the county court is Mr. LeMaster,
who said that he was elected a director of Common School
District No. 1 in the year 1902, and that shortly thereafter
his predecessor handed to him what purported to be a
certified copy of an order of the county court transferring
the lands in controversy from District No. 39 to District
No. 1, and that afterwards he went to the office of the
county clerk and saw the order on the record—his state-
ment being that the record book in which he saw the order
was a book of about two hundred pages, "a dark looking
book," that had a plat of the school district in it.    The
testimony of the witness was that the certified copy which
was turned over to him by his predecessor was from the
original order signed by the county judge, and that he had
lost it.    This testimony is far too vague and indefinite to
justify the re-establishment of a lost record or prove its
loss and contents.    The records of the county court are
kept in well bound books, unlike loose documents filed

in the office, and they can be readily turned to, or, if lost, the loss can be proved by the absence of the record book. There is no attempt to show here that there was any record book of the county court either missing or mutilated. Neither the clerk nor any of his deputies were introduced to account for any missing record book of the court. If the witness ever saw a recorded judgment of the county court on this subject, it could have been produced by the clerk or his deputies, or the loss of the record proved by some of them. It is not sufficient to say merely that the witness and other persons made a search in the clerk's office to find the record and failed to find it. Nor is the testimony sufficient to prove the contents of the lost record, even if sufficient to prove the loss. It is true that the witness says it embraced the controverted lands and transferred them from District No. 39 to District No. 1, but it is not made definite whether this was a change of the boundaries of the district under the authority of Crawford & Moses' Digest, § 8823, or whether it was a mere transfer of children and taxes for school purposes, pursuant to § 9056, Crawford & Moses' Digest. If the effect of the order was merely a transfer of the children and taxes, the subsequent formation of appellant district embracing that territory abrogated the former order of transfer. *Gacking* v. *School District of Fort Smith*, 65 Ark. 427. Such an order is temporary, and only remains in effect while the districts of and from which the transfer is made remain in existence, and any change in the status of the territory operates as an abrogation of the order of transfer.

Our conclusion therefore is that the court erred in denying the relief sought for by appellant.

There is no effort at the present time, as we have already said, to recover taxes for prior years, and it is obvious that appellant is not entitled to recover taxes which have been regularly, though erroneously, distributed to appellee district and consumed in educational purposes. It is too late now for appellant to recover

those funds, but appellant is entitled to the funds arising from the taxation on the disputed lands and to have those funds distributed to it; that is to say, the taxes in the hands of the treasurer at the time this suit was commenced and all subsequent taxes.

The decree is reversed, and the cause remanded with directions to enter a decree in accordance with the prayer of the amended complaint.