## SWIFT *v.* COMMON SCHOOL DISTRICT No. 8.

### Opinion delivered March 10, 1924.

1. SCHOOLS AND SCHOOL DISTRICTS—POWERS OF COUNTY BOARDS.—The effect of act No. 324 of Acts 1919, creating county boards of education, was to transfer jurisdiction theretofore vested in the county court and county judge, in the matter of conducting elections and creating special rural school districts, to the county board of education, without changing the method of procedure.

2. SCHOOLS AND SCHOOL DISTRICTS—TIME FOR CANVASS OF ELECTION RETURNS.—The duties of the county board of education, under Acts 1919, No. 324, § 11, requiring that it canvass the election returns and certify the result to the county court, are ministerial, and no intent is shown therein to name any definite day when the board shall meet to canvass the returns and declare the result, and such act repeals Acts 1919, No. 15, § 4, fixing a particular day when the returns should be convassed by the county court and the result declared.

3. SCHOOLS AND SCHOOL DISTRICTS—MAP OF CONTEMPLATED DISTRICT.—The requirement of Crawford & Moses' Dig., § 8832, requiring the filing of a map or plat showing the territory embraced in a common school district or districts to be included in a special school district, is directory only, and should be construed with the other sections of the statute *in pari materia*, providing for the time and manner of giving notice, and advising electors of the date of an election and subject-matter thereof.

4. SCHOOLS AND SCHOOL DISTRICTS—CREATING OF DISTRICT.—Where a petition for creation of a special school district sufficiently described the territory sought to be formed into a special school district, but the accompanying map failed to describe a section of land situated within the proposed district, such irregularity did not avoid the entire proceeding.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

*Moore & Moore* and *J. G. Burke,* for appellants.

The omission from the map of section 3 was a mere irregularity, not fatal to the proceedings. School laws were designed as a method workable by citizens not learned in law, and are not to be strictly construed. 201 S. W. 910; 73 Ill. 250; 28 N. E. 49; 182 N. W. 340. Such cases are to be differentiated from road district cases, as in that case the omission would be fatal.

*Jacob Fink* and *W. G. Dinning,* for appellees.

The proceedings of the county board were void for the reason that it met to canvass the vote and declare the result of the election on a day other than that required by law. Section 8834, C. & M. Digest. To hold otherwise would be to repeal by implication one very salutary provision of the statute. Such repeals are not favored. 157 Ark. 291. The Legislature having provided for the filing of a map showing all the district to be included, the necessity therefor cannot be dispensed with by the board. 146 Ark. 32. The filing of the map is jurisdictional. 147 Ark. 349.

*Moore & Moore* and *J. G. Burke,* in reply.

Section 8834, C. & M. Dig., was repealed by act No. 15 of the Acts of 1919, which vested powers in the board theretofore vested in the county court. 153 Ark. 55; 155 Ark. 161.

WOOD, J. The Barton Rural Special School District No. 4, in Phillips County, Arkansas (hereafter called special district), was created by order of the county board of education on the 9th day of May, 1922, under the provisions of §§ 8831 to 8842, inclusive, of Crawford & Moses' Digest. The special district was created under the law out of territory which formerly composed common school districts numbered 4, 8, 19, 21 and 39 of Phillips County, Arkansas.

Section 8832, Crawford & Moses' Digest, provides that the petition for the election "shall be accompanied by a map or plat showing the territory embraced in the common school district or districts to be included in the

proposed rural special school district, and said petition
and map shall be presented to the county board of educa-
tion in which such territory is situated, * * * and said
county board shall designate the time and place for hold-
ing the election," etc.   There was a map or plat filed
by the petitioners for the election, but it did not embrace
section 3, township 3 south, range 3 east, of Phillips
County, Arkansas, containing approximately 640 acres of
land, in which was situated the town of Oneida, a vil-
lage of possibly one hundred inhabitants, which section
was within the boundaries of Common School District No.
39, one of the common school districts embraced within
the special district.   The election was held, pursuant to
the petition, on the 6th day of May, 1922, and the county
board of education of Phillips County met on the 9th
day of May, 1922, for the purpose of declaring the result
of the election, and on that day, having ascertained that
a majority of the legal voters at the election were in
favor of the special district, entered an order creating
such district.   May 9th was not a day of either any
regular or adjourned session of the Phillips County
Court.

This action was instituted by common school dis-
tricts Nos. 8 and 19 and certain electors (hereafter called
appellees) against the members of the county board of
education (hereafter called appellants), petitioning for
a writ of certiorari, setting up that the creation of the
special district was void for, among other, the follow-
ing reasons:   That the county board of education met
on a day other than that required by law, and that there
was a fatal variance between the petition and the map
required to be filed with it, in that the map omitted the
description of the territory in Common School District
No. 39 as above described.   The allegations of the peti-
tion were denied by the appellants.

The above are the facts upon which the circuit court
found that the order of the county board of education
creating the special district was void, and entered

a judgment quashing the proceedings of said board, from which is this appeal.

1.   The appellee contends that the order of the board of education was void because the board met and canvassed the returns, declared the result of the election, and entered its order creating the special district on a day when the county court of Phillips County was not in regular or adjourned session. Act No. 15 of the Acts of 1919, approved January 28, 1919, provides as follows: "At the first regular or adjourned day of the county court after the filing of said election returns the county court shall canvass the vote and declare the result of said election, and shall make an appropriate order." Such was the law before the passage of act 234 of the Acts of 1919, approved March 11, 1919, creating a county board of education.

Section 11 of act 234, *supra,* among other things, provides: "All school elections held after the election and organization of the county board of education shall have the returns of such school elections made to the county board, and such county boards shall promptly canvass the returns and certify the results to the county court for proper record." The effect of act 234, *supra,* creating the county board of education, was to transfer the jurisdiction theretofore vested in the county judge and county court in the matter of conducting the election and creating special rural school districts to the board of education, without changing the method of procedure. See *Mitchell* v. *Directors of School Dist. No. 13,* 153 Ark. 50-55; *Acree* v. *Patterson,* 153 Ark. 188; *Robertson* v. *Special School Dist. No. 9,* 155 Ark. 161.

Now, it is manifest that the language of § 11 of act 234, *supra,* requiring that the board of education "shall promptly canvass the returns and certify the result to the county court for proper record," shows that it was the intention of the Legislature not to name any definite day when the board of education should meet to canvass the returns and declare the result of the election. These duties were mere ministerial functions to be performed

by the board of education. See *Graves* v. *McConnell,* 162 Ark. 167. The whole language of the section clearly shows that it was the intention of the lawmakers that these functions should be performed promptly and without waiting for some regular or adjourned day of the county court, which, in some counties of the State, would involve a considerable delay, as county courts meet in regular session only four times a year, and there is no certainty as to adjourned days of such courts.

Section 11 of act 234, *supra,* further provides that, in case contests arise, the county board of education shall meet and ascertain the facts in the case, and that all contests shall be filed with the board of education within fifteen days after such election. So the electors in the districts affected and the patrons of the schools are not interested in the mere ministerial functions of canvassing the returns and declaring the result of the election. What they are really interested in is the actual result as declared, and provision is made for a contest of this result. This is a judicial proceeding, and must be instituted within fifteen days after the election, and a hearing must be had thereon as soon as practicable. The whole language of this section is utterly incompatible with the idea that the board of education must canvass the returns and declare the result of the election on days fixed for the regular or adjourned days of the county court. Therefore section 11 of act 234, *supra,* must be held to repeal § 4 of act 15 of the Acts of 1919, fixing the particular day when the returns should be canvassed and the result of the election declared. *Eubanks* v. *Futrell,* 112 Ark. 437; *C. R. I. & P. Ry. Co.* v. *McIlroy,* 92 Ark. 600; *DeQueen* v. *Fenton,* 100 Ark. 504.

2. The contention of the appellee that the special district is void for the reason that there is a fatal variance between the petition and the map required to be filed with it cannot be sustained, for the reason that § 8832 of C. & M. Digest, *supra,* requiring the map or plat showing the territory embraced in the common school district or districts to be included in the special school district,

is directory only. This section must be construed as a whole and in connection with all the other sections of the statute *in pari materia.* Other sections provide for the time and manner of giving notice, advising the electors of the date of the election and the subject-matter thereof. See §§ 8827, 8829 and 8831, Crawford & Moses' Digest.

A map or plat was filed purporting to show the territory embraced in the common school districts to be included in the special district, but it failed to describe certain territory in District No. 39. This failure to accurately describe the territory embraced in District No. 39 did not render the entire proceeding null and void. An accurate description of the particular lands embraced in the common school districts was not essential to give the board of education jurisdiction to order the election under the statute. This was an irregularity, to be sure, but not such as to make void the entire proceedings creating the special district. The law requires, act 15 of the Acts of 1919, *supra,* that, when common school districts are formed into rural special school districts, the entire territory composing the common school districts must be embraced in the rural special district so formed. *School District No. 52* v. *Rural Special School Dist. No. 11,* 146 Ark. 32; *Clardy* v. *Winn,* 162 Ark. 320.

Where the petition describes the common school district or districts by their number or numbers, it is sufficient to advise the board of education of the territory sought to be formed into the rural special school district. In this case there was a petition specifying the numbers of the common school districts, including Common School District No. 39, to be embraced in the special district, and also accompanying the petition was a map or plat designating Common School District No. 39, but failing to describe accurately a section of land situated therein. It would be a highly technical construction to hold that this failure to accurately describe the lands by section, township and range was fatal to the entire proceeding. As is said by the Supreme Court of Missouri in the case of *Morrison* v. *Simms,* 201 S. W. 910, "technical objec-

tions to proceedings to organize consolidated school districts are not fatal, since school law was designed as a method workable by citizens not learned in law, and is not to be strictly construed." See also, *School Dist. No. 5 v. School Dist. No. 10,* 73 Ill. 250; *Kittleson* v. *Weltinger,* 182 N. W. 340.

The case of *Householder* v. *Harris,* 147 Ark 349, upon which learned counsel for the appellees rely as authority to support their contention, is not analogous and not controlling, for the reason that that case relates to the law for the creation of road improvement districts. The requirement of a plat or map showing the boundaries of the proposed road districts to be created rests upon an entirely different principle from the statute providing for the creation of rural special school districts out of common school districts and requiring a map or plat to be filed with the petition. In the creation of road districts the lands to be embraced in a district must bear the burden of taxation necessary to provide funds for making the improvement for which the district is formed. But in the matter of changing and consolidating common school districts into one rural special school district no such question is involved. There are other features also which show that the purposes of the two statutes are entirely different.

Our conclusion is that the circuit court erred in entering a judgment quashing the proceedings of the board of education by which the special district was created. The judgment is therefore reversed, and, inasmuch as the cause has been fully developed and as the facts are undisputed, judgment will be entered here dismissing the appellees' complaint and validating the proceedings of the county board of education of Phillips County, Arkansas, in creating the special district.